**STORMONT–VAIL REGIONAL MEDICAL CENTER, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary, Department of Health and Human Services, Defendant.**

**SISTERS OF CHARITY HOSPITAL, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**BOULDER COMMUNITY HOSPITAL, et al., Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**CARRINGTON HOSPITAL, et al., Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**Civ. A. Nos. 85–4011, 85–3651, 85–0031 and 85–3241.**

United States District Court, District of Columbia.

Sept. 25, 1986.

As Amended Oct. 8, 1986.

Dennis M. Barry and Alan J. Lipsitz of Wood, Lucksinger & Epstein, Washington, D.C., and Sanford V. Teplitzky and Carel T. Hedlund of Ober, Kaler, Grimes & Shriver, Baltimore, Md., for plaintiffs.

Henry R. Goldberg and Mary U. Salhus, Office of the General Counsel, Dept. of Health and Human Services, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

This case consolidates the appeals of four hospitals from the decision of the Deputy Administrator of the Health Care Financing Administration of the Department of Health and Human Services (HHS) denying payment of the full amount of reim-

bursement sought for routine services rendered inpatient Medicare beneficiaries.

The parties have filed cross motions for summary judgment and numerous supplemental pleadings. Plaintiffs allege the formula used to calculate reimbursement for routine services provided Medicare beneficiaries is arbitrary and capricious in that it forces non-Medicare routine patients to subsidize the routine care provided Medicare beneficiaries. Defendant disagrees, claiming the current reimbursement scheme avoids statutorily impermissible subsidies.

The Court has reviewed the pleadings filed by all parties, heard counsel elucidate their positions at several status conferences, and has had the benefit of oral argument. For the reasons articulated below, the Court finds that plaintiffs' Motion for Summary Judgment must be granted and defendant's Motion, denied.

## BACKGROUND

### The Labor/Delivery Room Issue

The relevant particulars of the Medicare program were set forth in two prior cases involving the regulation at issue here, *Saint Mary of Nazareth Hospital Center v. Schweiker,* 718 F.2d 459 (D.C.Cir.1983) (*St. Mary I*) and *Saint Mary of Nazareth Hospital Center v. Heckler,* 760 F.2d 1311 (D.C.Cir.1985) (*St. Mary II*). In the interests of brevity, only the salient points of the Medicare program will be recapitulated.

Hospitals may provide Medicare patients with either routine or ancillary care. Hospitals are reimbursed separately for each. Routine services are those for which an additional charge is not usually made. Ancillary areas are those where special services (e.g., x-rays, surgery) are provided. Labor and delivery rooms are ancillary areas. *See, St. Mary I,* 718 F.2d at 462 n. 4.

Medicare reimbursement for routine care is calculated in two steps: first, the average cost per diem for routine services is derived by dividing the total cost of routine services by the total number of inpatient days. The resulting quotient is multiplied by the total of Medicare inpatient days. The product is the reimbursement received by the hospital for routine care provided Medicare inpatients. The process can be represented as follows:

$$(1) \text{ average cost per diem} = \frac{\text{total cost of routine services}}{\text{total number of inpatient days}}$$

(2) amount reimbursed = (average cost per diem) × (number of Medicare beneficiary inpatient days).

*St. Mary II,* 760 F.2d at 1314; *St. Mary I,* 718 F.2d at 462 n. 7.

To derive the total number of patient days (i.e., the denominator in the first step of the calculation) hospitals take a patient census each day at midnight. In this census patients in ancillary areas are properly counted as routine patients because a patient's presence "in an ancillary-care area at midnight is nothing more than an artifact of the particular time when the patient receives ancillary services. [The] patient was receiving routine care before the receipt of ancillary care and will receive them afterwards, and thus contribute to routine costs." *St. Mary II,* 760 F.2d at 1314.

Section 2345 of the Provider Reimbursement Manual requires that Medicare providers include labor/delivery room days as inpatient routine days when calculating the average per diem costs used to determine the amount of Medicare reimbursement owed hospitals.

The plaintiff hospitals object to including labor/delivery room patients in the midnight census. There are few, if any, Medicare patients in labor/delivery rooms. The proportion of Medicare patients in other ancillary areas more closely corresponds to the proportion of Medicare patients in the routine care population. *St. Mary II,* 760 F.2d at 1315; *St. Mary I,* 718 F.2d at 472;

*Plaintiffs' Brief* at 9. Furthermore, none of the women in labor/delivery rooms have received routine care and many will never be admitted to routine beds before being discharged. (As many as 30% of the women admitted to labor rooms may be experiencing false labor.) *Plaintiffs' Brief* at 11; *St. Mary I,* 718 F.2d at 470. Consequently, the labor/delivery room policy counts as routine inpatients ancillary care patients who have never received routine care and will never receive routine care. The result is inflation of the denominator of the fraction used to determine the average cost per diem of routine service without a corresponding adjustment to the numerator. This reduces the average cost per diem which, in turn, reduces the reimbursement paid hospitals for routine care.

The government contends that it is necessary to include labor/delivery room patients in the midnight census. Once maternity patients are admitted to routine beds they will incur higher routine costs. Therefore, they need to be added to the count to avoid a subsidy of non-Medicare patients by Medicare patients. *Defendant's Brief,* at 11, 16–17.

### St. Mary I and St. Mary II

The validity of Section 2345 (the labor/delivery room regulation) is hardly a question of first impression. This regulation was twice the subject of decisions of this circuit's Court of Appeals and has been litigated in other circuits as well. *See,* cases listed at *Sioux Valley Hospital v. Bowen,* 792 F.2d 715, 722 (8th Cir.1986); *St. Mary I,* 718 F.2d at 465 n. 11 ("The labor/delivery issue has produced a flood of appeals to the PRRB, leading one service to conclude that it is 'one of the most controversial issues facing Medicare reimbursement' ".)

In *St. Mary I* plaintiff hospitals alleged the regulation was irrational. HHS defended the policy by arguing first, that the court should defer to agency expertise, and then suggesting six reasons why the decision of the Deputy Administrator should be affirmed:

(1) the definition of an inpatient day in the regulations is broad, and no reason appears to exclude labor/delivery room patients from that category; (2) many [hospitals], including some involved in this appeal, actually charge their labor/delivery room patients for a day of routine care even if the patient has not left the labor/delivery area; (3) routine care at all times is available to the labor/delivery area patients; (4) these patients will move to routine areas, and standby costs therefore should be attributed to them; (5) any disparity between costs and reimbursement is a result of averaging, which is a basic and judicially accepted component of the Medicare reimbursement scheme; (6) this accounting of labor/delivery patients is consistent with the accounting for patients in all other ancillary areas.

718 F.2d at 466.

The court did not feel that, in this instance, deference needed to be paid to agency expertise. It then rejected the government's first five arguments outright. However, the court recognized that the distortion caused by including labor/delivery patients in the routine census might be offset by a disproportionately large number of Medicare patients in other ancillary areas at the census hour. Therefore, the case was remanded for the "limited purpose of taking evidence on the issue of whether the use of other ancillary services by Medicare beneficiaries at the census taking hour suffices to compensate for the dilution of Medicare reimbursement caused by including labor/delivery area patients in the calculation of average general routine costs per diem". *Id.* at 474.

On remand, HHS conceded that it could not make such a showing, *Saint Mary of Nazareth Hospital v. Heckler,* 587 F.Supp. 937, 938 (D.D.C.1984), but argued that it should be allowed to introduce evidence concerning routine costs. This court ruled that the government's proffer was beyond the scope of the remand and judgment was entered for the plaintiffs.

HHS appealed. In *St. Mary II* the Court of Appeals affirmed this court's interpreta-

tion of its remand and held that since HHS could not prove the requisite ancillary offset the labor/delivery room policy is "conclusively invalid". 760 F.2d at 1317.

*The Instant Litigation*

HHS is again before this Court, defending its labor/delivery room policy. The facts are undisputed.

Plaintiffs are four non-profit hospitals. The parties are contesting the validity of the formula for calculating the reimbursement due plaintiffs for inpatient routine services provided Medicare beneficiaries as set forth in Provider Reibursement Manual § 2345.

Application of section 2345 resulted in plaintiffs' fiscal intermediaries reducing the hospitals' claimed reimbursement. Plaintiff Stormont-Vail's reimbursement was reduced $198,570. Plaintiff Sisters of Charity's reimbursement was reduced $53,-121. The plaintiffs in Boulder Community Hospital, *et al.*, had their reimbursement reduced $1.8 million. The plaintiffs in Carrington Hospital, *et al.*, had their reimbursement reduced $191,627. *Plaintiffs' Statement of Material Facts Not In Dispute,* ¶¶ 3, 8, 14, 20.

All plaintiffs filed timely appeals with the Provider Reimbursement Review Board (PRRB). The PRRB ruled in favor of the plaintiffs and "[held] that labor/delivery room days should not be included within the count of routine inpatient days when calculating routine inpatient per diem costs". *Defendant's Statement of Material Facts Not In Dispute,* ¶ 3.

In *Stormont-Vail Regional Medical Center,* No. 85–4011, the Deputy Administrator reversed the PRRB's decision and upheld the labor/delivery room policy. Plaintiff is now appealing this decision of the Deputy Administrator.

The plaintiff hospital in *Sisters of Charity Hospital,* No. 85–3651, was also a party in *St. Mary II.* The Deputy Administrator remanded this case to the PRRB for further consideration of the Fitzmaurice and Cromwell affidavits. These affidavits were before the PRRB when it made its decision. Plaintiff appealed the remand to this Court. In compliance with this Court's Order of January 23, 1986, the Deputy Administrator issued a final agency decision. This decision reversed the PRRB. Plaintiff is now before the Court, appealing this final decision.

In *Boulder Community Hospitals, et al.,* No. 85–0031, the Deputy Administrator remanded the case to the PRRB for consideration of the Fitzmaurice and Cromwell affidavits. These affidavits were not considered by the Board in its earlier proceedings. Plaintiff appealed this remand to this Court. Pursuant to the January 10, 1986 Order of this Court the Deputy Administrator issued a final agency decision reversing the PRRB. It is this decision from which plaintiff appeals.

In *Carrington Hospital, et al.,* No. 85–3241, the defendant requested an oral hearing before the PRRB. This request was denied. Subsequently, as in *Sisters of Charity,* the Deputy Administrator remanded this case to the PRRB for further consideration of the Fitzmaurice and Cromwell affidavits. As in *Sisters of Charity* this evidence had been available to the PRRB. Plaintiff appealed the remand. Pursuant to this Court's Order of January 23, 1986, the Deputy Administrator issued a final agency decision. This decision reversed the PRRB and upheld the labor/delivery room policy. It is this decision from which plaintiff appeals.

In a status call on January 22, 1986, the parties agreed that these four cases should be consolidated. In accordance with the stipulated schedule, the consolidation Order was issued on February 27, 1986.

IN ST. MARY II THE EVIDENCE CONTAINED IN THE FITZMAURICE AND CROMWELL AFFIDAVITS WAS RULED INSUFFICIENT TO SUSTAIN THE LABOR/DELIVERY ROOM POLICY. THEREFORE, THE DOCTRINE OF STARE DECISIS PROHIBITS THIS COURT FROM DEEMING SUCH EVIDENCE SUFFICIENT.

*Principles of Stare Decisis*

■ *Stare decisis* is the doctrine of precedent; it makes the decisions of superi-

or courts binding on subordinate courts. *"Stare decisis,* unlike the doctrines of *res judicata* and collateral estoppel, is not narrowly confined to parties and privies.... Rather, ... the doctrine is broad in impact, reaching strangers to the earlier litigation." *Equal Employment Opportunity Commission v. Trabucco,* 791 F.2d 1, 2 (1st Cir.1986); *Consumers Union of the United States, Inc. v. Consumer Product Safety Commission,* 590 F.2d 1209, 1217 (D.C.Cir.1978); 1B *Moore's Federal Practice* ¶¶ 0.401, 0.402[2] (1985).

*The Labor/Delivery Room Policy Has Been Ruled Arbitrary and Capricious By this Circuit's Court of Appeals. Because the Facts and Issues in Those Cases Are Identical to the Facts and Issues Now Before the Court, This Court Is Bound By Those Prior Rulings.*

As mentioned, this Circuit's Court of Appeals has twice before ruled on challenges to the labor/delivery room policy.

In *St. Mary I* the Court rejected five arguments advanced in support of the policy and ruled that the policy could only be sustained if the government could show an offset from other ancillary care areas. The government could not. In *St. Mary II* the Court held that absent this showing the policy must be considered "arbitrary and capricious".

The plaintiff hospitals argue that this Court's inquiry need go no farther. The issue now before the Court is identical to the issue in *St. Mary I and II:* the validity of the labor/delivery room policy. HHS still admits that it cannot make the requisite evidentiary showing. Since the defendant cannot satisfy its burden of proof, plaintiffs argue that this Court is compelled by *St. Mary I and II* to declare the labor/delivery room policy arbitrary and capricious and enter judgment for plaintiffs.

Defendant concedes the issue here is identical to that in *St. Mary I and II* but insists that the record is fundamentally different. At the administrative level in the cases now before the Court the defendant

introduced, or was prepared to introduce, new evidence developed to prove the labor/delivery room policy has a rational basis.

This evidence consists of affidavits executed by Drs. Fitzmaurice and Cromwell, economists specializing in health care. Their affidavits analyze the Medicare reimbursement scheme and purportedly show that the labor/delivery room policy is necessary to offset the higher cost of providing routine care to maternity patients once they leave the labor/delivery area.

HHS argues that it was not permitted to introduce these affidavits into evidence in *St. Mary II* because they were not part of the administrative record. Consequently, the Court of Appeals ruled the government had waived its right to introduce the affidavits in subsequent judicial proceedings. *Defendant's Brief,* at 15–16.

The government finds support for this contention in three separate paragraphs of the opinion in *St. Mary II. Transcript of Hearing of April 14, 1986* at 45–47.

The strongest support for the government's contention is found on page 1319. After summarizing HHS's new, affidavit-based, argument, the court writes: "This is, however, a prohibitively new tack for HHS. The agency did not raise this point in *St. Mary's I* or in its petition for rehearing." (citations omitted). Thus, HHS claims the Court would not review the affidavits because the defendant was attempting to use them to support a rationale being advanced for the first time.

The Seventh and Fourth Circuits agree with the defendant's explanation of why it was not allowed to introduce the affidavits in *St. Mary II. Central Du Page Hospital v. Heckler,* 761 F.2d 354 (7th Cir.1985), Order of July 1, 1985 (Attached to *Defendant's Brief,* Exhibit 6) (*"St. Mary II* makes it clear that the court refused to permit the Secretary to prove the second proposition because she did not raise it in *St. Mary I* or in her petition for rehearing". Order of July 1 at 2.)

In *Community Hospital of Roanoke Valley v. Heckler*, 770 F.2d 1257, 1265 (4th Cir.1985) the allusion is more veiled. The defendant cites the sentence "In *St. Mary of Nazareth, II*, the court properly restricted its remand order to allow the Secretary to present evidence she had indicated to the court she wanted to present". Defendant infers that this indication was made too late to permit introduction of the Fitzmaurice and Cromwell affidavits.

However, the government has introduced, or attempted to introduce, these affidavits in the PRRB proceedings in the instant cases. Consequently, HHS now argues that the record currently before the court is significantly different than the record in *St. Mary I* and *II*. Therefore, this court, in passing on the validity of § 2345, can and should consider the equity of the reimbursement scheme.

HHS's argument is fatally flawed.

First, there is explicit language in *St. Mary II* indicating that that court considered and rejected the evidence defendant now wants to introduce.

Not only does *St. Mary II* cite the Fitzmaurice affidavit, 760 F.2d at 1319, but, earlier, the court, in several places, emphasized that an arbitrary and capricious regulation cannot be sustained on the grounds it is a component of a larger, equitable policy. (*E.g.*, "But this case ... has never presented the court with an opportunity to review the panoramic equity of the Medicare reimbursement scheme." 760 F.2d at 1318.)

HHS's reliance on dicta is not persuasive because there is contrary dicta from other circuits. *See, Tucson Medical Center v. Heckler*, 616 F.Supp. 852, 854 (D.Ariz.1985) ("Both the District of Columbia Circuit and the Ninth Circuit Courts of Appeals have rejected, as not relevant the evidence that the administration asserts in this case through the [Fitzmaurice and Cromwell] affidavits. *See, Mt. Zion Hospital and Medical Center v. Heckler*, 758 F.2d 1346 (9th Cir.1985) and *St. Mary of Nazareth Hospital Center v. Heckler*, 760 F.2d 1311 (D.C.Cir.1985).")

However, this court's finding that *St. Mary II* controls this case is based on more than the selective quotations of the parties from *St. Mary II* and decisions from other circuits.

This court relies on explicit language in *St. Mary II* which states that the labor/delivery room policy cannot be sustained absent a showing by HHS of ancillary offset. "HHS should not be able to attribute to labor/delivery patients the costs of care that they never receive simply because HHS asserts that it can show the result is that non-Medicare patients contribute roughly the same amount of money that they generate in costs." 760 F.2d at 1318.

In the instant proceedings HHS has not even tried to make the requisite showing. Instead, HHS has continued its effort to rehabilitate its labor/delivery room policy by proving that the Medicare reimbursement scheme equitably distributes routine costs between Medicare and non-Medicare patients. *Transcript of Hearing of April 14, 1986* at 54 ("Medicare must pay its proportionate share. If we are paying our proportionate share, we win".); *Defendant's Brief* at 17.

■ This effort, at least in this circuit, is doomed. The cases now before the court are identical in all material respects to *St. Mary II*. The issues in the two cases are the same and the facts are congruent. Therefore, *stare decisis* compels this court to find that in the absence of evidence that the distortion caused by the labor/delivery room policy is offset by application of this policy to patients in other ancillary areas, Provider Reimbursement Manual § 2345 must be found arbitrary, capricious and otherwise not in accordance with the law.

## HHS'S ARGUMENTS WERE CONSIDERED AND REJECTED IN ST. MARY II. THUS, THEY CANNOT NOW PROVIDE GROUNDS FOR SUSTAINING THE LABOR/DELIVERY ROOM POLICY.

■ The government offers several reasons why the labor/delivery room policy

should be sustained. Three merit discussion: (1) because of the higher routine costs incurred by maternity patients once they are admitted to routine beds, the policy is necessary to ensure that Medicare pays its proportionate share of routine costs; (2) the policy is reasonable, rational and, perhaps, the only way to ensure Medicare's system of averaging costs for purposes of reimbursement works; and (3) the Fitzmaurice and Cromwell affidavits are not *post hoc* rationalizations.

These arguments were considered and rejected in *St. Mary II.* They cannot now prevail in a subordinate court.

*In St Mary II the Court Found That the Labor/Delivery Room Policy Impermissibly Weights Patient Days In Violation Of HHS'S Regulations.*

According to HHS, the Fitzmaurice and Cromwell affidavits provide a statistical rationale for the labor/delivery room policy.

■ Defendant contends the affidavits reveal that maternity patients, once admitted to routine service, require more expensive care than Medicare patients. Including labor/delivery room patients in the routine census compensates for the higher routine costs these patients will later incur. Failure to make such an adjustment would disproportionately increase the hospitals' Medicare reimbursement, causing a statutorily impermissible subsidy. *See,* 42 U.S.C. § 1395x(v)(1)(A); *Defendant's Brief* at 17–21.

This argument was rejected in *St. Mary II* and must be rejected here, too.

The affidavits look at the labor/delivery room issue in the overall context of the Medicare reimbursement scheme. But *St. Mary II* made it plain that the regulation can only be defended on the basis of ancillary offset, not the general equity of the Medicare reimbursement program. "But [*St. Mary I and II*], from [their] inception, [have] never presented the court with an opportunity to review the panoramic equity of the Medicare reimbursement scheme. The issue has always been whether [HHS's] decision to count labor/delivery patients who have received no routine care as routine inpatients is arbitrary, capricious, or otherwise not in accordance with the law." 760 F.2d at 1318.

Second, *St. Mary II* held that including labor/delivery room patients in the routine census to offset the allegedly higher routine costs subsequently incurred by non-Medicare patients is an impermissible weighting of patient days. 760 F.2d at 1319.

HHS's regulations require that the average cost per diem of routine care be computed "by dividing the total allowable inpatient cost for routine services by the total number of inpatient days of care". 42 C.F.R. § 405.452(d)(7) (1980). The regulations state that "[calculation of the average cost per diem] does not take into account variations in the amount of services which a day of care may represent and thereby *assumes that patients for whom payment is made on this basis are average in their use of service."* 42 C.F.R. § 405.403(d) (1980). (Emphasis added.)

Adjustments for any variations in the amount of care categories of patients require can be made by the designation of an area as "special routine care". *St. Mary II,* 760 F.2d at 1314, 1319. HHS has not made such a designation here. Instead, it opted for impermissible weighting of patient days. *St. Mary II* held that the labor/delivery room policy cannot be supported on this basis.

Therefore, since the arguments made on the basis of the evidence in the Fitzmaurice and Cromwell affidavits have been rejected, the affidavits themselves are irrelevant. *Accord, Sioux Valley Hospital v. Bowen,* 792 F.2d at 722–723.

*The Labor/Delivery Room Policy Is Not A Rational Implementation of the Applicable Statute and Regulations.*

It is undisputed that HHS has the authority to determine reimbursement policy and its regulations provide for the apportionment of routine costs between Medicare and non-Medicare patients according to a system of averaging. *Plaintiffs' Brief* at 27; *Defendant's Brief* at 23–24.

■ The issue before this court is whether § 2345 of the Provider Reimbursement Manual distorts the averaging system by including in the routine census labor/delivery room patients who have not yet received routine care and who are disproportionately non-Medicare patients.

Defendant argues that the labor/delivery room policy is essential to an equitable, administratively viable reimbursement scheme and warrants deference to agency expertise. HHS maintains labor/delivery room patients must be included in the routine patient census to offset the higher costs of routine care generated by maternity patients once admitted to routine service. This, in turn, allegedly prevents subsidy of non-Medicare patients by Medicare patients and eliminates the need for an unwieldy, administratively complex accounting system. This argument, too, was rejected in *St. Mary I* and *II.*

The *St. Mary* courts recognized two critical differences between labor/delivery room patients and patients in other ancillary areas.

First, labor/delivery room patients are disproportionately non-Medicare patients. Second, patients in other ancillary areas at the census hour are on their way to or from routine beds. Their presence in an ancillary care area at the census hour is but an accident of timing. *St. Mary II,* 760 F.2d at 1314. Conversely, labor/delivery room patients have not received routine care, may never receive routine care, and yet are having routine costs attributed to them. *Id.* at 1315.

Thus, § 2345 results in a subsidy of Medicare patients by non-Medicare patients. This is not in conformance with 42 U.S.C. § 1395x(v)(1)(A)(i). Accordingly, *St. Mary II, id.* at 1318, ruled this practice impermissible. On the identical record this court must follow suit.

*The Fitzmaurice and Cromwell Affidavits Are Post Hoc Rationalizations And, As Such, Cannot Sustain The Labor/Delivery Room Policy.*

Defendant filed a Notice of Supplemental Authority, calling this court's attention to *Population Institute, Population Council, et al. v. M. Peter McPherson, Administrator, et al.,* 797 F.2d 1062 (D.C.Cir.1986). In this case defendant withheld grant money from a United Nations program because it believed the program ineligible to receive the money under the terms of a recent statute. Plaintiff obtained an injunction from the Circuit court requiring the defendant to retain the grant money pending appeal. The Circuit court reasoned that the critical issue was one of statutory construction and, after review of defendant's arguments, the Court felt "there was a good probability the determination would not be upheld on appeal". 797 F.2d at 1067.

Before the case was heard on the merits the Administrator reaffirmed his earlier decision to withhold the money, but on the basis of a fresh examination of the statute in light of the Circuit court's decision. This was not held to be a *post hoc* rationalization. The court distinguished "a hypothetical explanation of appellate counsel of why an agency might have done something" from the situation before the court where "the decisionmaker himself, faced with the knowledge gleaned from a formal opinion of this Court, that his decision would likely not withstand appellate review, reconsidered the matter and arrived at the same result, but expanded on his rationale". 797 F.2d at 1072.

■ In the case now before this court HHS argues that, in accord with the logic of *Population Institute,* it should be allowed to present evidence that the labor/delivery room policy should be sustained as a reasonable means of ensuring Medicare pays its proportionate share of hospital costs.

However, there are several differences between the circumstances in *Population Institute* and the instant cases that lead this court to reject HHS's argument. First, in *Population Institute* the second statement of the Administrator's reasoning

was issued before a decision on the merits was reached and was apparently only an amplification of his previous rationale. The Administrator was responding to the just voiced concerns of the Court of Appeals. Here, HHS wants to introduce its new rationale almost a decade after the promulgation of the labor/delivery room policy. Second, the Court of Appeals noted that *Population Institute* presented novel circumstances which permitted the agency "after preliminary court review [to] think things through again and offer a more acceptable explanation of its legislative interpretation". 797 F.2d at 1072. There are no novel circumstances in the cases before this court. Moreover, the rationalization in question does not involve statutory construction, but the application of accounting practices to support a policy years after its promulgation. Finally, the affidavits would be used to make an argument that the labor/delivery room policy is a reasonable means of ensuring that Medicare pays it proportionate share of hospital costs. But, as has been discussed, this explanation is legally insufficient; this policy can only be sustained upon a showing of ancillary offset.

## THE DOCTRINE OF COLLATERAL ESTOPPEL BARS HHS FROM LITIGATING THE LABOR/DELIVERY ROOM ISSUE AGAINST ANY OF THE PLAINTIFF HOSPITALS.

### Issue Preclusion in General

■ The doctrine of collateral estoppel or issue preclusion prohibits relitigation of issues "actually and necessarily determined by a court of competent jurisdiction ... in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

The numerous requirements for application of the doctrine have been summarized as follows:

(1) [T]he issue must have been actually litigated, that is contested by the parties

and submitted for determination by the court.

(2) [T]he issue must have been 'actually and necessarily determined by a court of competent jurisdiction' in the first trial.

(3) [P]reclusion in the second trial must not work an unfairness.

*Jack Faucett Associates, Inc. v. American Telephone & Telegraph*, 744 F.2d 118, 125 (D.C.Cir.1984) (quoting *Otherson v. Department of Justice, INS*, 711 F.2d 267, 273 (D.C.Cir.1983)). *See*, 18 Wright, Miller & Cooper, *Federal Practice and Procedure*: Jurisdiction § 4416.

The Supreme Court has sanctioned defensive use of collateral estoppel against the federal government "where the government is litigating the same issue, arising under virtually identical facts against the same party". *United States v. Stauffer Chemical Company*, 464 U.S. 165, 104 S.Ct. 575, 580, 78 L.Ed.2d 388 (1984).

### HHS Is Barred From Relitigating the Labor/Delivery Room Issue Against a Party in St. Mary II.

Sisters of Charity Hospital, a plaintiff in one of the cases in this consolidated action, was also a party in *St. Mary II*.

Both cases concerned challenges to HHS's labor/delivery room policy.

Defendant contends that its attempts in the cases at bar to introduce the Fitzmaurice and Cromwell affidavits at the administrative level materially distinguishes the record now before the court with the record in St. Mary II. However, for the reasons previously enunciated, these affidavits are irrelevant, as a matter of law.

Defendant also asserts the public interest will best be served if it receives a waiver from the normal rules of preclusion. *St. Mary II* has imposed a new evidentiary burden. HHS wants an opportunity to litigate the merits of the labor/delivery room issue in light of this burden. This request is denied only because HHS's new evidence is not directed at meeting the evidentiary burden imposed by *St. Mary I and II* (ancil-

lary offset) but at attempting to prove a defense already judicially deemed inadequate (that the Medicare reimbursement scheme is, overall, equitable).

■ Given the identity of parties, issue, facts, and the absence of any countervailing special circumstances, *Montana v. United States*, 440 U.S. at 154 n. 5, 99 S.Ct. at 974 n. 5, it is appropriate that the government be collaterally estopped from contesting Sisters of Charity Hospital's challenge to HHS's application of Provider Reimbursement Manual § 2345.

*Mendoza Does Not Bar the Plaintiffs' Offensive Use of Collateral Estoppel To Prevent the Defendant From Relitigating the Labor/Delivery Room Issue In This Circuit.*

In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Supreme Court narrowed the reach of *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), with its holding that *"Parklane Hosiery's* approval of nonmutual offensive collateral estoppel is not to be extended to the United States."* 104 S.Ct at 571.

This limitation has several purposes. First, in instances of intercircuit conflicts it allows the Supreme Court the benefits of "percolation" before certiorari is granted. *Id.* at 572. Second, it permits the Solicitor General tactical discretion in determining which adverse decisions to appeal. The result is conservation of judicial resources. *Id.* at 572–573. Third, it allows for changes in administration policy. *Id.* at 573.

However, the scope of *Mendoza* is uncertain. The Supreme Court summarized its holding as follows: "nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues *such as those involved in this case." Id.* at 574. (Emphasis added.) Courts and commentators are uncertain about the implications of these last words. *See,* Levin and Leeson, *Issue Preclusion Against the United States Government,* 70 Iowa L.Rev. 113,

121 (1984) ("[The] rule ... invites speculation concerning the precise nature of the issue *'involved in this case'* ".) (Emphasis in original.)

Here, it is appropriate and proper that plaintiffs now before the court who were not parties in *St. Mary II* be permitted to invoke nonmutual collateral estoppel against defendant HHS to preclude relitigation of the labor/delivery room issue in this circuit.

■ The reasons for requiring the government to follow the law of the circuit in subsequent litigation involving nonparties was well stated in *Stieberger v. Heckler,* 615 F.Supp. 1315 (S.D.N.Y.1986):

*Mendoza* does not support the right asserted by defendants to refuse to apply the legal rules enumerated in a *circuit court decision* in subsequent cases *within the same circuit.* None of the three considerations relied upon in *Mendoza* is in any significant way threatened by a rule of mandatory intra-circuit acquiescence in circuit court decisions; indeed, the Court specifically noted in *Mendoza* that its holding would permit the informal development of law to occur 'by allowing litigation in multiple forums.' Certainly, the Secretary's non-acquiescence policy is not necessary to preserve the government's interest in discretionary decisionmaking in the appellate review process or the legal system's interest in maintaining the process of intercircuit percolation which leads to the more thorough and informed development of legal doctrine.

615 F.Supp. at 1359. (Emphasis in original.) (Citations omitted.)

Here, there is an additional reason to permit nonmutual offensive collateral estoppel against the government. One plaintiff, Sisters of Charity Hospital, has already benefitted from estoppel. It is especially inappropriate for a district court not to follow the law of the circuit when divergence would create inconsistent results.

PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S EXHIBIT 12 IS DENIED.

There is one remaining matter. Plaintiffs filed a Motion to Strike Exhibit 12 of Defendant's Memorandum in support of its Motion for Summary Judgment. (Exhibit 12 is the copy of the record in a labor/delivery room case heard by the Provider Reimbursement Review Board.) The court has considered plaintiffs' Motion, defendant's Opposition thereto, and heard oral argument.

Plaintiffs argue that Exhibit 12 is not part of the administrative record in the instant cases. Therefore, the Deputy Administrator's decision cannot be sustained on the basis of this evidence. According to HHS, "Exhibit 12 was submitted solely for the purpose of demonstrating what the Government was prepared to demonstrate if the Provider Reimbursement Review Board had in fact conducted a full evidentiary hearing as directed by the remand orders of the Administrator in the instant cases." *Memorandum In Opposition to Plaintiffs' Motion to Strike* at 2. However, HHS does not suggest that Exhibit 12 contains any evidence bearing on the question of ancillary offset. Instead, HHS argues that this evidence is "highly relevant" and "specifically relate[s]" to the equity of the averaging principle, the historical basis of the labor/delivery room policy, and that the policy helps avoid impermissible subsidies. *Memorandum In Opposition to Plaintiff's Motion to Strike* at 5.

In light of the court's decision on the parties' cross-motions for summary judgment, plaintiffs' Motion to Strike is moot. Plaintiffs' request for attorney fees incurred for preparing and arguing this Motion to Strike is denied. Exhibit 12 is just a proffer, and, under these circumstances, filing an Opposition to a proffer does not warrant the award of attorney fees.

## CONCLUSION

*St. Mary I and II* have foreclosed much debate. In the wake of these decisions the labor/delivery room policy can only be sustained if the government can prove ancillary offset. HHS's attempt to escape the reach of *St. Mary I and II* has caused it to rely on arguments previously rejected as inadequate.

The doctrines of preclusion and stare decisis leave this court no alternative but to follow the commands of the Court of Appeals and hold that the labor/delivery room policy as set forth in Provider Reimbursement Manual § 2345 is arbitrary, capricious, and otherwise not in accordance with the law.

An Order consistent with the foregoing shall be issued.

## ORDER

In accordance with the Opinion issued in the above captioned case of even date herewith and for the reasons set forth therein, it is, by the Court, this 25th day of September, 1986,

ORDERED, that plaintiffs' Motion for Summary Judgment is granted and defendant's Motion for Summary Judgment is denied; and, it is

FURTHER ORDERED, that labor/delivery room patients who have not previously that day received routine services, and who enter a routine bed and remain there through the next census hour, may not be counted among the routine inpatient population at the midnight census for calculating the average cost per diem for general routine services under the Medicare Statute and Regulation; and, it is

FURTHER ORDERED, that a copy of this Order shall be sent immediately by Defendant to the fiscal intermediaries responsible for plaintiff hospitals, with directions to compute the amount owing to plaintiffs for the fiscal years in question no longer than forty-five days from the date of this Order. Such amounts shall include interest computed to the date of actual payment in accordance with 42 U.S.C. § 1395oo(f). Payment of such amounts shall be made no later than sixty days from the date of this Order.