**SUNSHINE HEALTH SYSTEMS, INC., dba Christian Hospital Medical Center, Plaintiff–Appellee,**

v.

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant–Appellant.**

**No. 87–6065.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1988.

Decided March 22, 1988.

As Amended May 10, 1988.

---

Ian Fan, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellant.

Thomas J. Weiss, Shea & Gould, Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, FERGUSON and BEEZER, Circuit Judges.

FERGUSON, Circuit Judge:

The Secretary of the Department of Health and Human Services ("Secretary"), appeals the district court's amended final judgment awarding interest to Sunshine Health Systems, Inc. ("Sunshine"), at the rate of 15.875 percent. The Secretary argues that this interest rate is inapplicable to proprietary hospitals such as Sunshine, and that the proper interpretation of the statutory provision requiring payment of interest requires calculation at the rate of 10.583 percent. We agree.

### I.

Sunshine originally brought suit against the Secretary, challenging its designation of Sunshine as a "new" hospital for purposes of Medicare reimbursement during the transition period from Medicare's old cost-based system to its new fixed payment system. The district court agreed with Sunshine, ordered reimbursement under the interim payment system and further ordered that interest be paid at the rate "required by law." This Court then affirmed the district court's decisions, ordering interest to be calculated pursuant to 42 U.S.C. §

1395oo(f)(2). *Sunshine Health Systems, Inc. v. Bowen,* 809 F.2d 1390, 1399 (9th Cir.1987). The district court subsequently amended its original order, awarding the payment of interest at the rate of 15.875 percent.

The Secretary then filed this appeal, contending that the district court's reading of these provisions was in error, and that the proper rate of interest for proprietary hospitals, such as that operated by Sunshine, is only 10.583 percent.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

### II.

Critical to our decision is the legislative history of the statutory and regulatory enactments addressing interest payments and return on equity capital. We address this legislative history first, and then consider its application to the issues raised on appeal.

### A.

42 U.S.C. § 1395oo(f)(2), enacted in 1974, authorizes the payment of interest where a party has sought judicial review of an administrative decision of Medicare's Provider Reimbursement Review Board ("PRRB"). It provides that interest shall be paid at a rate "equal to the rate of return on equity capital established by regulation pursuant to section 1395x(v)(1)(B) of this title and in effect at the time the civil action authorized under paragraph (1) is commenced," and that the interest is to be awarded by the reviewing court "in favor of the prevailing party." [1]

Section 1395x(v)(1)(B), originally enacted in 1966, provides for reimbursement of the reasonable cost of extended care services provided by proprietary facilities under Medicare. This figure was meant to include return of equity capital at a rate not to exceed one and one-half times the average rates of interest for certain specified debt obligations. [2]

---

1. Interest is based on the amount of reimbursement in dispute, and begins "on the first day of the first month beginning after the 180–day pe-

riod as determined pursuant to subsection (a)(3) of this section...." 42 U.S.C. § 1395oo(f)(2).

2. Section 1395x(v)(1)(B) provides in relevant part:

The phrase "extended care services" is defined in 42 U.S.C. § 1395x(h) as referring to various items and services furnished by a skilled nursing facility to an inpatient of that facility, and does not include inpatient hospital services provided by proprietary hospitals, such as Sunshine. Thus, this definition left Sunshine ineligible for a return on its equity capital under section 1395x(v)(1)(B).

However, the legislative intent at the time section 1395x(v)(1)(B) was enacted was that "similar or comparable principles in determining reasonable costs for reimbursement of proprietary hospitals" be applied by the Secretary. See Conf.Rep. No. 2317, 89th Cong., 2d Sess. 166, *reprinted in* 1966 U.S.Code Cong. & Admin.News 3676, 3692–93. Thus, in conformance with congressional intent, the Department of Health and Human Services ("HHS") issued 42 C.F.R. § 405.429(a)[3], which provided for a return on equity capital to *all* proprietary providers, both skilled nursing facilities providing extended care services, and proprietary hospitals furnishing inpatient hospital services. The rate of return for all providers was set at a percentage equal to *one and one-half times* the average of the rates of interest on certain public debt obligations.

This case comes before us due to legislation enacted in 1983, 42 U.S.C. § 1395ww, which established the Prospective Payment System ("PPS") for inpatient hospital services provided by proprietary hospitals. Rather than reimbursing providers on a cost basis for health care services, PPS allows providers to be paid prospectively on the basis of predetermined rates for services. Subsection (g)(2) of the PPS statute provides for reimbursement to proprietary hospitals of equity capital, and requires that the Secretary promulgate regulations allowing such return of equity capital at a rate *equal* to the average of the rates of interest on certain debt obligations.[4]

Following enactment of section 1395ww(g)(2), in 1983 HHS amended its prior regulation, 42 C.F.R. § 405.429(a), originally enacted under section 1395x(v)(1)(B). The amendment created a distinction between proprietary hospitals and other proprietary providers offering inpatient hospital services in the rate of return on equity capital to which each was entitled. As amended, regulation 405.-429(a)(1)(iii) set the rate of return for proprietary hospitals at a rate *equal* to the average of specified interest rates. In contrast, regulation 405.429(a)(1)(ii) kept the rate of return for all other proprietary providers (such as skilled nursing facilities offering extended care), at *one and one-half times* the average rates.[5]

In its amended order dated April 20, 1987, the district court awarded interest to Sunshine at the rate of 15.875 percent, using the one and one-half factor. The court's award was based on its interpretation of 42 U.S.C. §§ 1395oo(f)(2) and 1395x(v)(1)(B), 42 C.F.R. § 405.429, and a "Table of Interest Rates for Proprietary Provider's Return on Capital for Other Than Inpatient Hospital[s] July 1985 through June 1986."[6]

---

Such regulations in the case of extended care services furnished by proprietary facilities shall include provision for specific recognition of a reasonable return on equity capital.... The rate of return ... shall not exceed one and one-half times the average of the rates of interest, for each of the months any part of which is included in such fiscal period, on obligations issued for purchase by the Federal Hospital Insurance Trust Fund.

**3.** This regulation was redesignated on September 30, 1986. See 51 Fed.Reg. 34790 (1986). It is now located at 42 C.F.R. § 413.157.

**4.** Section 1395ww(g)(2) does not address or alter the return on equity capital allowed under section 1395x(v)(1)(B) for extended care services provided by skilled nursing facilities.

**5.** Subsequently, in 1986, section 1395x(v)(1)(B) was amended, setting the rate of return on equity capital for extended care services at a factor of one, conforming it with the rate allowed for proprietary hospitals. Sunshine filed its action seeking reimbursement of monies expended providing Medicare services on February 8, 1985, fourteen months prior to this amendment of section 1395x(v)(1)(B).

**6.** There is no indication by the district court which would explain its reliance on the table referred to in the amended order, and it appears wholly irrelevant to a determination of the

**B.**

The Secretary argues that Congress intended that the rate of interest payable following judicial review of PRRB decisions match the rate of return of equity capital. Moreover, the Secretary contends that, although the regulation in effect in February 1985 had been amended pursuant to section 1395ww(g)(2), rather than subsection x(v)(1)(B), application of the amended regulation is nevertheless in accordance with a reasonable interpretation of section 1395oo(f)(2), and is consistent with that section's underlying purpose.

The regulations of the Secretary must be interpreted in light of the governing statutes, and must be consistent with and in furtherance of the purposes and policies embodied therein. *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123, 131 (9th Cir.1980). In construing the Medicare statutes, some deference is to be given to the interpretation of the agency charged with the administration of those statutes. *Regents of University of California v. Heckler*, 771 F.2d 1182, 1187 (9th Cir.1985). However, deference to the Secretary must yield to the clear meaning of the statute as revealed by its language, purpose and history. *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 900 (1979).

Through the Medicare Act of 1965, "Congress made clear its intent that providers were to be reimbursed, as nearly as possible, for all costs necessarily incurred in the efficient delivery of health care services to Medicare beneficiaries." *Regents*, 771 F.2d at 1188. The Senate Report accompanying the Act elaborated on this Congressional intent by noting that reimbursement under section 1395 should "approximate as closely as practicable the actual cost (both direct and indirect) of services rendered to the beneficiaries of the program...." S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 1976. Included in this economic cost is equity capital invested in the facility for the furnishing of services. Conf.Rep. No.

2317, 89th Cong., 2d Sess. 166, reprinted in 1966 U.S.Code Cong. & Admin.News 3676, 3692.

By including a provision for the return of equity capital to proprietary facilities, Congress in effect authorized the reimbursement of profit that would have accrued had the facilities been providing services not covered by Medicare. This provision thus facilitates a more accurate approximation of a provider's actual cost of providing Medicare services.

Sunshine suggests that the return of equity capital and payment of litigation interest need not be treated similarly, and thus, different methods of calculation may be used for each. Yet it also concedes there is no basis in logic or precedent for this construction.

The provision of interest after judicial review of reimbursement decisions by the PRRB serves Congress' expressed purpose of reimbursing as closely as possible the actual cost of providing Medicare services. Subsection oo(f)(2) specifically states that interest shall be *"equal to the rate of return on equity capital* established by regulation pursuant to section 1395x(v)(1)(-B)...."* (emphasis added.) This reference to the only statute then in effect relating to the return of equity capital clearly indicates Congress' intent to inextricably link the calculation of interest with that provided for the return of equity capital. Such a construction is logical because it leaves health care providers who prevail following judicial review of Medicare decisions in the same position they would have been in in the absence of such review.

Section 1395oo(f)(2) requires that the rate of interest be equal to the rate of return of equity capital specified in regulations promulgated under section 1395x(v)(1)(B). While section 1395x(v)(1)(B) applied only to skilled nursing facilities, the regulation adopted in 1982, 42 C.F.R. § 405.429, encompassed, consistent with Congress' express intent, proprietary hospitals as well. However, because of the distinction section

---

proper rate of interest for Sunshine, an inpatient hospital. Moreover, the rate of interest at

issue is that which was in effect on February 8, 1985—a date not included in the table.

1395ww(g)(2) makes between proprietary hospitals and other providers, its enactment required the amendment of regulation 405.429 as that regulation relates to proprietary hospitals.[7]

Sunshine seems to believe that because the 1983 amendment of regulation 405.429 was made pursuant to section 1395ww(g)(2), rather than section 1395x(v)(1)(B), the amendment should be disregarded and inapplicable to this case. However, the effectiveness of an amendment to a regulation does not depend on the purposes for which a party refers to that regulation. Rather, its validity depends—like the validity of any regulation—on (1) whether it exceeds the scope of the authority pursuant to which it is promulgated,[8] (2) whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and (3) whether proper procedures were followed in its issuance. *Evergreen State College v. Cleland,* 621 F.2d 1002, 1009 (9th Cir.1980) (*citing Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–17, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). There has been no contention that the amendment fails in any of these areas. If this court was to disregard the amendment as Sunshine would like, the result would be to render section 1395ww(g)(2) ineffective—a result which is extreme, unnecessary and unwarranted. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984) (where two statutes are capable of coexistence, the courts must regard each as effective in the absence of a clearly expressed congressional intent to the contrary.) In addition, such a notion violates established principles of statutory construction. *See e.g., FMALI Herb, Inc. v. Heckler,* 715 F.2d 1385, 1387 (9th Cir.1983) (regulations implementing a statutory mandate "have the force and effect of legislation, and may not be set aside because a court would have read the statutory mandate differently."); *Montgomery Ward & Co., Inc. v. F.T.C.,* 691 F.2d 1322, 1329 (9th Cir.1982) (an amendment is proper "when adequate notice is provided to affected parties pursuant to appropriate rule-making procedures."). Moreover, such a construction lies in direct conflict with Congress' express intent in this area.

In enacting the Prospective Payment System under section 1395ww, Congress re-evaluated the actual cost to proprietary hospitals of providing Medicare benefits. Evidently, Congress determined that a factor of one in calculating a proprietary hospital's return on equity capital, and the payment of interest tied to that return on equity capital, resulted more closely in the reimbursement of actual costs of providing Medicare benefits. This culminated in the enactment of subsection (g)(2), and ultimately led to the amendment of 42 C.F.R. 405.429.

The regulations currently in effect were originally promulgated pursuant to section x(v)(1)(B) and as amended are sufficient for the purposes of litigation interest calculation. At the same time, they are consistent with the Congressional mandates of section ww(g)(2) for calculation of return of equity capital.

Thus, the interpretation of section 1395oo(f)(2) and the accompanying disregard of the amended form of regulation 405.429 urged by Sunshine and adopted by the district court, do not square with the intent of Congress in adopting the provisions relevant to this dispute.

### III.

It is stretching beyond the limits of literal construction to find that the regulations

---

7. Sunshine argues, however, that if Congress intended the amended regulation to apply to the payment of interest, it could have amended section 1395oo(f)(2) to include a reference to the 1983 PPS legislation and its effect on the rate of return of equity capital for proprietary hospitals. However, there was no need for Congress to so amend section 1395oo(f)(2). *United States v. Fausto,* — U.S. ——, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988) (The "classic judicial task of reconciling many laws enacted over time ... necessarily assumes that the implications of a statute may be altered by the implications of a later statute."). It is sufficient that section 1395oo(f)(2) identifies the relevant regulation for determining the proper rate of interest.

8. The language of the amendment is nearly identical to the mandate of section 1395ww(g)(2).

originally adopted under section 1395x(v)(1)(B), yet subsequently amended pursuant to a revamping of the reimbursement system for proprietary hospitals, are not included within the purview of section 1395oo(f)(2).

Thus, the district court erred in its interpretation of the pertinent statutory and regulatory authority. The decision of the district court is REVERSED, and REMANDED with an instruction to award interest at the rate of 10.583 percent.