ST. AGNES HOSPITAL, et
al., Plaintiffs,

v.

Otis R. BOWEN, M.D., Secretary of the
Department of Health and Human
Services, et al., Defendants.

Civ. A. No. 86–512.

United States District Court,
District of Columbia.

March 9, 1989.

---

Robert A. Klein, Margaret M. Manning, John R. Hellow of Weissburg and Aronson, Inc., Los Angeles, Cal., and David T. Smorodin of Allen T. Eaton & Associates, Washington, D.C., for plaintiffs.

Mary U. Salhus and Henry R. Goldberg, Office of Gen. Counsel, Dept. of Health and Human Services, Washington, D.C., and Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

The above-entitled suit arises out of plaintiff hospitals' challenge to a decision of the Department of Health and Human Services denying a request for the reimbursement of routine services rendered inpatient medicare beneficiaries. On March 4, 1987, the Court entered judgment in plaintiffs' favor.[1]

The parties agree that, under 42 U.S.C. § 1395oo (f)(2), plaintiffs are entitled to interest on that judgment. The sole bone of contention between the parties is the rate at which interest should be assessed. Plaintiffs argue that they are entitled to interest at a rate equal to one and one-half times the average rates of return on special issues of public debt obligations to the Federal Hospital Insurance Trust Fund (13.875%). The Government contends that plaintiffs are entitled to interest only at a rate equal to the average rates of return on Federal Hospital Insurance Trust Fund obligations (9.25%).[2] Both parties have moved to clarify the rate at which interest must be paid.

The Court has had the benefit of oral argument and thorough briefs on these motions. After considering the arguments advanced by the parties and the underlying law, the Court finds that plaintiffs are entitled to interest at a rate of one and one-half times the average rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund, and it will enter an Order to this effect.

BOTH THE EXPRESS LANGUAGE OF THE RELEVANT STATUTORY SECTION AND THE LANGUAGE AND DESIGN OF THE MEDICARE ACT AS A WHOLE SUPPORT PROVISION OF INTEREST AT A RATE EQUAL TO ONE AND ONE–HALF TIMES THE AVERAGE RATES OF INTEREST ON SPECIAL ISSUES OF FEDERAL HOSPITAL INSURANCE TRUST FUND DEBT OBLIGATIONS

The parties agree that 42 U.S.C. § 1395oo (f)(2) establishes the plaintiffs'

1. The Court granted plaintiffs' motion for summary judgment because the issues raised in this case were identical to those decided by the Court in *Stormont–Vail Regional Medical Center v. Bowen,* 645 F.Supp. 1182 (D.D.C.1986). Since the Court's Opinion in *Stormont–Vail* did not address the rate at which interest on the judgment should be assessed, the Court, in its Order entering judgment in this suit, consolidated this case with *Stormont–Vail* for the purpose of resolving any disputes over the proper interest rate.

The plaintiffs in this suit first raised the issue of the proper interest rate on February 10, 1987; defendants did not respond to plaintiffs' motion until July 10, 1987. Thereafter, the Court deferred ruling on the parties' motions for clarification of the proper interest rate because the parties continuously asserted that they were about to reach an agreement on this issue.

2. The Government has already paid plaintiffs interest at a rate of 9.25% on the judgment entered in plaintiffs' favor.

right to interest on the judgment entered in their favor. The Court's interpretation of that section must be guided by the Supreme Court's recent reaffirmation that a court must first look at the express language of the relevant section, and then may consider "the language and design of the statute as a whole." *Bethesda Hospital Association v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988). Both the plain language of § 1395*oo* (f)(2) and the "language and design" of the Medicare Act support plaintiff's claim of entitlement to interest at the higher rate.

The relevant statutory section provides:

Where a provider seeks judicial review ... the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180–day period as determined pursuant to subsection (a)(3) of this section and *equal to the rate of return on equity capital established by regulation pursuant to section 1395x(v)(1)(B) of this title and in effect at the time the civil action ... [was] commenced,* to be awarded by the reviewing court in favor of the prevailing party.

42 U.S.C. § 1395*oo* (f)(2) (1983) (emphasis added).

This suit was filed on February 25, 1986. At that time, there was only one regulation in effect promulgated pursuant to 42 U.S.C. § 1395x(v)(1)(B) (1983). That regulation concerns the rate of return on equity capital paid as an allowance to proprietary providers other than those providing inpatient hospital services. Under that regulation, for cost reporting periods beginning prior to April 20, 1983,[3]

... the amount allowable on an annual basis is determined by applying to the provider's equity capital a percentage equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the

provider's reporting period or portion thereof covered under this program.

42 C.F.R. § 405.429(a)(ii) (1985).

By virtue of the above, it is clear that plaintiffs are entitled to litigation interest at the rate established by this regulation: a rate "equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund" during the months relevant to plaintiffs' claims.

Defendants, however, argue that the Court should ignore the plain language of the statute and should pay no attention to the apparently applicable regulation because the provision of the Medicare statute dealing with litigation interest was, in effect, amended by implication in 1983 when Congress changed the method for hospital reimbursement to a prospective payment system. In converting to a prospective payment system, Congress added a new section to the Medicare statute. That new provision, found at 42 U.S.C. § 1395ww(g)(2), deals with "capital-related costs of capital expenditures for inpatient hospital services" and, in pertinent part, states:

The Secretary shall provide that the amount which is allowable, with respect to reasonable costs of inpatient hospital services for which payment may be made under this subchapter, for a return on equity capital for hospitals shall, for cost reporting periods beginning on or after April 20, 1983, be equal to amounts otherwise allowable under regulations in effect on March 1, 1983, except that the rate of return to be recognized shall be equal to the applicable percentage ... of the average rates of interest ... on obligations issued for purchase by the Federal Hospital Insurance Trust Fund.

42 U.S.C. § 1395ww(g)(2)(A) (Supp.1987).

After the enactment of section 1395ww(g)(2), the Department of Health and Human Services amended its prior regulation, 42 C.F.R. § 405.429(a), initially promulgated pursuant to 42 U.S.C. § 1395x(v)(1)(B), so as to provide a differ-

---

**3.** This suit involves cost reporting periods from 1979 through 1982.

ent rate of return on equity capital for proprietary inpatient hospitals than that provided for other proprietary providers. In its amended version, 42 C.F.R. § 429(a)(1)(iii) set the rate of return for inpatient proprietary hospital services at a rate *equal* to the average of specified rates. In contrast, section 405.429(a)(1)(ii) maintained the rate of return for all other proprietary providers at a rate equal to one and one-half times the average of specified rates.

The United States Court of Appeals for the Ninth Circuit has upheld the Government's position that the rate of interest should vary with the rate of return on equity capital established for inpatient hospital services pursuant to 42 C.F.R. § 429(a)(1)(iii), the regulation promulgated pursuant to 42 U.S.C. § 1395ww(g)(2)(A), rather than with the rate of return on equity capital established for other proprietary providers pursuant to 42 C.F.R. § 405.429(a)(1)(ii), the regulation promulgated pursuant to 42 U.S.C. § 1395x(v)(1)(B). *See Sunshine Health Systems v. Bowen,* 842 F.2d 1097 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988). The Ninth Circuit based its decision on its conclusion that Congress intended "to inextricably link the calculation of interest with that provided for the return of equity capital." *Id.* at 1100. The Ninth Circuit explained that Congress specifically pegged the rate of interest to the rate on equity capital established by regulations promulgated pursuant to 42 U.S.C. § 1395x(v)(1)(B) simply because that was the only statute then in effect relating to the return of equity capital. *Id.*

The Court must reject the Ninth Circuit's reasoning in *Sunshine.* In effect, the Ninth Circuit held that litigation interest is governed by a regulation promulgated pursuant to a statutory provision setting the rate of return on equity capital payable to proprietary hospitals for inpatient hospital services, and not by a regulation promulgated pursuant to the statutory provision establishing the applicable interest rate in Medicare litigation. The Ninth Circuit's reasoning is contrary to the express lan-

guage of the statute. In addition, the Ninth Circuit's conclusion rests on the unsubstantiated premise that litigation interest and the rate of return on equity capital are coterminous. Although both the Senate and the Conference Reports on 42 U.S. C. § 1395*oo* (f)(2) provide explicit evidence of congressional intent to make litigation interest available to health care providers seeking judicial review of decisions of the Provider Reimbursement Board, neither of these reports suggest there is any connection between the availability of litigation interest and the rate of return on equity capital. *See* H.R.Conf.Rep. 1407, 93rd Cong., 2d Sess., at 3; S.Rep. 1065, 93rd Cong., 2d Sess., at 4, U.S.Code Cong. & Admin.News 1974, pp. 5992, 5995.

Moreover, the position of the Government and the Ninth Circuit that § 1395*oo* (f)(2) was amended by the enactment of § 1395ww(g)(2) is more than a bit disingenuous, as Congress has not only reduced the allowance for equity capital rates of return, it has phased these allowances out entirely. *See* 42 U.S.C. § 1395ww(g)(2)(B). Thus, if the Government and the Ninth Circuit are correct, Congress has not simply amended the provision for litigation interest, but has, in fact, repealed that part of the statute by implication. This argument cannot be sustained.

As the Government well knows, courts cannot easily infer amendment or repeal by implication, especially when the change affects clear statutory language. The Supreme Court instructs that, " 'in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.' " *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 778, 101 S.Ct. 2142, 2146, 68 L.Ed. 2d 612 (1981) (quoting *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974)). With this precept in mind, the Court must reject the Government's position, as the legislative history of the 1983 amendments to the Medicare Act do not even hint at any congressional intent to alter or effect the statutory section pro-

**28**

viding for litigation interest.[4] Moreover, the original and the new provisions of the Medicare Act can be reconciled with ease. *See Rodriguez v. United States*, 480 U.S. 522, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (explaining that an intent to repeal may be referred only when two statutory provisions suggest the existence of an "irreconcilable conflict").

It is conceivable that Congress intended to entitle hospitals to interest at the trust fund rate when the Secretary makes an administrative determination of the proper reimbursement for inpatient hospital services, but, if the Secretary errs and the hospital has to go to court to receive its fair share of Medicare reimbursement, the Department of Health and Human Services faces a penalty and has to pay one and one-half times the trust fund rate. In light of the absence of an explicit repeal of 42 U.S.C. § 1395oo (f)(2) and the Supreme Court's admonition against repeals by implication, the Court will read the new and original provisions of the Medicare Act as complementary rather than in conflict with one another, and concludes that Congress intended for the return of equity capital and litigation interest to be treated differently. Accordingly, the Court concludes that plaintiffs are entitled to interest at a rate of one and one-half times the average rates of return on special issues of public debt obligations to the Federal Hospital Insurance Trust Funds pursuant to 42 C.F.R. § 405.429(a)(ii) (1985).

In the event that the Court were to conclude that the litigation interest rate is governed by 42 C.F.R. § 405.429(a)(ii) (1985), the Government points to section 9107 of the Consolidated Omnibus Budget Reconciliation Act ("COBRA")[5] as an alternate basis for denying plaintiffs the higher interest rate. This section of COBRA amended 42 U.S.C. § 1395x(v)(1)(B) so as to set the rate of return on equity capital for extended care facilities to a percentage equal to the average rates of return for trust fund investments to conform to the rate allowed for proprietary hospitals. This amendment was enacted on April 17, 1986, and applies to cost periods beginning after October 1, 1985. The Court cannot discern how this amendment would effect the rate of litigation interest to which plaintiffs are entitled as this provision was not in effect on February 25, 1986, the date on which this action was commenced.[6] *See Sunshine Health Systems, Inc.*, 842 F.2d at 1099 n. 5 (suggesting that the 1986 amendment to § 1395x(v)(1)(B) has no bearing on the calculation of litigation interest when the suit was filed prior to the effective date of the amendment). Accordingly, the Government's position that COBRA entitles plaintiffs to litigation interest only at a rate equal to the average of the rates of return on Federal Hospital Insurance Trust Fund obligations is without merit.

For the reasons set forth herein, plaintiffs are entitled to litigation interest at a rate equal to one and one-half times the average rates of return on special issues of public debt obligations to the Federal Hospital Insurance Trust Fund. The Court will issue an Order of even date herewith memorializing these findings.

## ORDER

In accordance with the Court's Opinion of even date herewith, is, by the Court, this 9th day of March, 1989,

ORDERED that defendants shall be, and hereby are, directed to pay plaintiffs litigation interest on the judgment entered in their favor at a rate of 13.875%, which represents one and one-half times the aver-

---

4. *See* H.R.Rep. No. 98–25, 98th Cong., 1st Sess. 80, *reprinted in* 1983 U.S.Code Cong. & Admin. News 143, 219; S.Rep. No. 98–23, 98th Cong., 1st Sess. 1, *reprinted in* 1983 U.S.Code Cong. & Admin News 143; H.Conf.Rep. No. 98–47, 98th Cong., 1st Sess. 115, *reprinted in* 1983 U.S.Code Cong. & Admin. News 404.

5. Pub.L. No. 99–272 (codified at 42 U.S.C. § 1395x(v)(1)(B) (Supp.1987)).

6. The language of 42 U.S.C. § 1395oo (f)(2) explicitly provides that litigation interest shall be "equal to the rate of return on equity capital established pursuant to section 1395x(v)(1)(B) of this title *and in effect at the time the civil action ... [was] commenced..."* (emphasis added).