**ST. JOSEPH'S HOSPITAL, a California nonprofit corporation, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION/BLUE CROSS OF CALIFORNIA, United States Department of Health and Human Services, Defendants.**

**No. C–83–4041 MHP.**

United States District Court, N.D. California.

June 27, 1989.

J.J. Brandlin, Brandlin & McAllister, Los Angeles, Cal., for plaintiff.

Michael Tonsing, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., for defendants.

## OPINION

PATEL, District Judge.

Following a settlement between plaintiff, a health care provider, and defendant Blue Cross/Blue Shield, the court remanded this

case to the Provider Reimbursement Review Board for a determination of the amount of reimbursement and prejudgment interest owed plaintiff. The matter is now before the court on plaintiff's motion, pursuant to the Social Security Act, 42 U.S.C. § 1395oo(f)(1), to review the Secretary of Health and Human Services' modification of the PRRB's determination. Plaintiff also moves for compound interest on the reimbursement. Having considered the arguments of the parties, the brief of amicus curiae, and the supplemental authority provided by defendant Department of Health and Human Services ("Department"), the court grants plaintiff's motion and awards interest at the rate sought by plaintiff pursuant to 42 C.F.R. § 413.157(a)(1)(ii). Plaintiff's motion for compound interest is denied.

BACKGROUND

The long litigation history of this case is only tangentially related to the instant motion and will not be fully recounted here. In brief, the action concerns a dispute over payment due St. Joseph's Hospital, a nonprofit health care provider, through Blue Cross/Blue Shield, a Medicare intermediary. Following the negotiation of a settlement between the parties which included both principal and interest, the Provider Reimbursement Review Board ("PRRB"), an oversight body established by the Social Security Act, 42 U.S.C. § 1395oo, vacated the settlement because it determined that the amount of prejudgment interest had been incorrectly calculated. On December 19, 1986, the court remanded the case to the PRRB for a full hearing to determine the amounts due. The court retained jurisdiction over the case.

On September 27, 1988, the PRRB held that interest should be calculated at the rate advocated by St. Joseph's. This rate is equal to one and one half times the rate of return on equity capital, as established by regulation pursuant to 42 U.S.C. § 1395x(v)(1)(B). The Administrator modified the PRRB's decision on November 25, 1988, reducing the interest rate from 150 to

100 percent of the rate established by the equity capital regulation. Plaintiffs seek a determination by this court that the PRRB's decision to award interest at the 150 percent rate was correct, and seek an order that the interest be compounded.

*Discussion*

*I. Rate of interest*

■ Under 42 U.S.C. § 1395oo(f)(2), Medicare providers who prevail in an action for reimbursement are entitled to interest on the judgment. Instead of setting a specific rate for this litigation interest, however, Congress enacted a twofold adoption by reference of interest rates established for other purposes under the Medicare program. Section 1395oo(f)(2) provides that interest on judgments shall be

> equal to the rate of return on equity capital established by regulation pursuant to section 1395x(v)(1)(B) of this title and in effect at the time the civil action ... is commenced.

Although only proprietary providers are entitled to a return on equity capital under section 1395, *all* providers who prevail in reimbursement actions are entitled to interest on judgments. *See* 42 U.S.C. § 1395oo(a) ("*Any* provider ... may obtain a hearing" before the PRRB) (emphasis added); § 1395oo(f)(1) ("Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary"); § 1395oo(f)(2) ("Where a provider seeks judicial review ... the amount in controversy shall be subject to annual interest....").

To determine the rate of interest applicable to a judgment, 42 U.S.C. § 1395oo(f)(2) requires the court to look at the equity capital regulation established pursuant to section 1395x(v)(1)(B) and in effect at the time the suit is filed. This action was filed on September 3, 1983. At that time, the only regulation propounded pursuant to section 1395x(v)(1)(B) dealing with the rate of return on equity capital was 42 C.F.R. § 405.429(a)(1)(ii) (1983),[1] which stated,

---

**1.** *Recodified at* 42 C.F.R. § 413.157(a)(1)(ii) (1986). 51 Fed.Reg. 34790 (September 30,

1986). The equity capital regulations were altered substantially in 1987. *See* 42 C.F.R.

[T]he amount allowable on an annual basis is determined by applying to the provider's equity capital a percentage equal to *one and one-half times the average* of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the provider's reporting period or portion thereof covered under the program.

(emphasis added).

The Department argues, however, that the rate of interest should be equal to the *average* of the Trust Fund rate, rather than one and one-half times that average. The Department points to 42 C.F.R. § 405.429(a)(1)(iii) (1983), which states,

For cost reporting periods beginning on or after April 20, 1983, the amount allowable in determining the return related to inpatient hospital services is determined using a percentage *equal to the average* of the rates of interest as described in paragraph (a)(1)(ii) of this section.

(emphasis added).

This portion of the regulation was added on September 1, 1983, as part of the Secretary's interim final rules effectuating the 1983 Social Security Amendments, Pub.L. 98–21, Title VI, § 601, 97 Stat. 149–152 (1983).[2] However, paragraph (a)(1)(iii) of the regulation was added pursuant to 42 U.S.C. § 1395ww(g)(2), not section 1395x(v)(1)(B). *See* 48 Fed.Reg. 39798 (Sept. 1, 1983). Section 1395ww established a new payment system for inpatient hospital services. 42 U.S.C. § 1395ww.

### a. Analysis of statutes and regulations

Were this court the first to deal with the question of whether section (a)(1)(ii) or section (a)(1)(iii) of the regulation was applicable in calculating prejudgment interest, the court would not hesitate to find, as did Judge Richey of the District of Columbia,

that the rate set under section (a)(1)(ii), as the only rate propounded pursuant to 42 U.S.C. § 1395x(v)(1)(B), was the appropriate reference rate. *See St. Agnes Hospital v. Bowen*, 707 F.Supp. 24, 25–26 (D.D.C. 1989) (upholding 150 percent rate found in section (a)(1)(ii)).

In this circuit, however, this is not a case of first impression. In *Sunshine Health Systems, Inc. v. Bowen*, 842 F.2d 1097, 1100 (9th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988) (hereinafter *"Sunshine II"*), the Ninth Circuit held that the rate of interest payable to a proprietary hospital which successfully fought the Secretary's attempt to reclassify it under the Prospective Payment System ("PPS"), enacted in 1983 was the 100 percent rate established by section (a)(1)(iii), not the 150 percent rate under section (a)(1)(ii). The Department maintains that this court is bound by *Sunshine II* and must find that section (a)(1)(iii) applies in this action. The court disagrees.

While this court is bound by *Sunshine II* on the issues the Ninth Circuit decided there, that case does not necessarily control this one. Two principal differences suggest this court should reach a different result from that adopted in *Sunshine II* and should instead follow the reasoning of *St. Agnes Hospital.*

### 1. Regulations in effect as of filing date

The first reason to distinguish this case from *Sunshine II* involves the time periods at issue in each case. The provider in *Sunshine II* filed suit in 1985, challenging the Secretary's 1984 decision to classify it as a "new hospital" during the Prospective Payment System transition period (which began in October 1983). *See Sunshine Health Systems, Inc. v. Bowen*, 809 F.2d 1390, 1392–93 (9th Cir.1987) (hereinafter *"Sunshine I"*). Section (a)(1)(iii) had been

§ 413.157 (1987). Because this order deals only with the 1983 regulations, the 1983 C.F.R. designation will be used herein.

**2.** These 1983 Social Security Amendments dealt primarily with the establishment of a new payment system for Medicare providers, called the

Prospective Payment System ("PPS"). The PPS changed the entire reimbursement scheme for Medicare providers, restricting reimbursement for most services to predetermined amounts. *See* 42 U.S.C. § 1395ww et seq.

promulgated and was in effect at the time of filing and during the cost reporting period at issue in the *Sunshine II* litigation.

In this case, by contrast, St. Joseph's sought (and has recovered) reimbursement for costs incurred from 1975 to 1979, well before the PPS was instituted and section (a)(1)(iii) promulgated.

By statute, litigation interest is determined by looking at the equity capital regulation in force at the time the suit is filed, 42 U.S.C. § 1395oo(f)(2), not necessarily the regulation effective during the cost period at issue in the litigation.[3] The regulation upon which the Secretary urges the court to rely, section (a)(1)(iii), was promulgated as an interim final rule on September 1, 1983, two days before St. Joseph's filed this suit. *See* 48 Fed.Reg. 39752 (Sept. 1, 1983). The effective date of the regulations generally was October 1, 1983. *Id.*

Although the effective date of the regulations promulgated on September 1, 1983 was October 1, 1983, *after* the date of the filing of this action, the Secretary points to the following language in the regulation:

> In general, these regulations are effective on October 1, 1983. They will be applied with cost reporting periods beginning on or after October 1, 1983, with the following exceptions.... The amendments to § 405.429 will be applied for cost reporting periods beginning on or after *April 20, 1983.*

48 Fed.Reg. 39752 (Sept. 1, 1983) (emphasis added).

The Department argues that this retroactivity provision in the interim final rule

serves to bring the filing date of this action within the parameters of section 405.-429(a)(1)(iii). The court disagrees. Assuming arguendo that the Secretary possesses authority to effect retroactive changes in the rate of interest,[4] the court nonetheless finds that interest on the judgment in this action falls under the provisions of 42 C.F.R. § 405.429(a)(1)(*ii*), not section (a)(1)(*iii*). If the Department is correct that the exception to the October effective date of the September 1, 1983 regulations served to place section (a)(1)(iii) in effect as of April 20, 1983 the result would be that as of the filing date of this action, *both* section (a)(1)(ii) and section (a)(1)(iii) were valid. The court must look further, therefore, to determine which section correctly defines the interest rate in this action.

By its terms, section (a)(1)(ii), setting the equity capital return rate at 150 percent of the Trust Fund average, applied "[e]xcept as provided in paragraph (a)(1)(iii)." 42 C.F.R. § 405.429(a)(1)(ii) (1983). In other words, section (a)(1)(ii) applied in all situations except those defined by section (a)(1)(iii). Section (a)(1)(iii) set a return rate of 100 percent for inpatient hospital services *only* "for cost reporting periods beginning on or after April 20, 1983." While Congress has provided that litigation interest is determined by reference to the regulation in effect at the time the action is filed, 42 U.S.C. § 1395oo(f)(2), when that regulation specifically provides for rates geared to a cost reporting period, that cost reporting period must govern. The Secretary cannot pick and choose among the

---

**3.** The court notes for the record that amicus' argument that this court should ignore the express statutory provision tying litigation interest to the filing date rather than the cost reporting date is untenable as a matter of law. Amicus contends that "if the proper interest rate applicable to successful Medicare reimbursement appeals were somehow tied not to the cost reporting periods in dispute but rather to that cost reporting period in which the action was filed [this would constitute] an unjustified and exceedingly complicated approach." Amicus' Response to Secretary's letter of March 20, 1989 at paragraph 5. Amicus' position is flatly contradicted by 42 U.S.C. § 1395oo(f)(2), which explicitly adopts this "unjustified and exceedingly complicated approach."

**4.** Because the court finds that even if section (a)(1)(iii) is interpreted as effective beginning April 20, 1983, plaintiff in this action is entitled to interest as established under section (a)(1)(ii), the court need not reach the retroactivity issue raised by amici in their letter of April 17, 1989, responding to the Secretary's submission of supplemental authority. *See Bowen v. Georgetown University Hospital,* —— U.S. ——, ——, 109 S.Ct. 468, 474, 102 L.Ed.2d 493 (1989) (invalidating Secretary's retroactive rulemaking in context of cost-limit rules because Congress did not grant Secretary explicit authority to promulgate retroactive rules).

provisions of the regulation. The entirety of the regulation applies, and in this case the rate of return urged by the government applies to cost reporting periods on or after April 20, 1983.

The court finds therefore that under the terms of section (a)(1)(iii) itself, the only actions which would by virtue of the retroactivity provision fall under section (a)(1)(iii) rather than section (a)(1)(ii) are those dealing with "cost reporting periods beginning on or after April 20, 1983." This is not such a case. Since the cost reporting periods at stake in this litigation occurred in the 1970's, and since section (a)(1)(iii) applies only to cost reporting periods after April 20, 1983, while section (a)(1)(ii) continued to govern all others, the court finds that section (a)(1)(ii) is the appropriate reference rate for interest on St. Joseph's reimbursement.[5]

## 2. Status of the provider

The second basis for this court's departure from the *Sunshine II* court's analysis is the different status of the provider plaintiffs in the two cases. In *Sunshine*, the hospital plaintiff was a private, for-profit participant in the Medicare program. *Sunshine I*, 809 F.2d at 1393. St. Joseph's Hospital is a non-profit provider. While the Ninth Circuit did not explicitly limit its holding in *Sunshine II* to proprietary hospitals alone, it disregarded the statute's direction that interest be determined by regulation propounded pursuant to 42 U.S.C. § 1395x(v)(1)(B). Instead, the court held that interest was controlled by regulation enacted under 42 U.S.C. § 1395ww(g)(2), based on its interpretation of Congressional intent underlying the Prospective Payment System. The panel found that

> [i]n enacting the Prospective Payment System under section 1395ww, Congress re-evaluated the actual cost to *proprietary hospitals* of providing Medicare benefits. Evidently, Congress deter-

mined that a factor of one in calculating a *proprietary hospital's* return on equity capital, and the payment of interest tied to that return on equity capital, resulted more closely in the reimbursement of actual costs of providing Medicare benefits. This culminated in the enactment of subsection (g)(2), and ultimately led to the amendment of 42 C.F.R. 405.-429.

\*   \*   \*   \*   \*   \*

It is stretching beyond the limits of literal construction to find that the regulations originally adopted under section 1395x(v)(1)(B), yet subsequently amended pursuant to a revamping of the reimbursement system *for proprietary hospitals*, are not included within the purview of section 1395oo(f)(2) [establishing litigation interest for all Medicare participants].

842 F.2d at 1101–02 (emphasis added). The panel thus clearly expressed its view that a *proprietary hospital* subject to the new PPS' equity capital regulations should not be heard to complain of the application of those regulations in determining interest rates.

St. Joseph's Hospital, however, unlike Sunshine Hospital Systems, is a non-profit provider. It is not eligible for a return on equity capital under either section (a)(1)(ii) or section (a)(1)(iii), since that benefit goes only to proprietary providers. *See* 42 U.S.C. § 1395x(v)(1)(B) (establishing return on equity capital). Section (a)(1)(iii), enacted pursuant to 42 U.S.C. § 1395ww(g)(2), shaped the Prospective Payment System for *inpatient proprietary hospital services*, not for nonprofit services. Insofar as the *Sunshine II* decision rests on the court's interpretation of section (a)(1)(iii)'s intent to affect rates of return on equity capital for proprietary hospitals like Sunshine Health Systems but *not* for nonprofit providers like St. Joseph's, therefore, the decision is of uncertain applicability here.[6]

---

**5.** This approach also makes sense of the Ninth Circuit's discussion of the relevance of the entire PPS system, enacted long after the cost reporting periods at issue here, to the interest

problem in *Sunshine II*. *See infra* section I(a)(2).

**6.** At least one district court has questioned the Ninth Circuit's reasoning even in the context of

### b. Constitutional analysis

In its moving papers, plaintiff St. Joseph's Hospital advanced an elaborate constitutional argument, urging the court to invalidate the application of section (a)(1)(iii) to it as violative of the equal protection clause. Because the court finds on statutory grounds that the interest rate urged by plaintiff is applicable to this action, the court need not reach plaintiff's constitutional arguments.

### II. Compound interest

■ Plaintiff's motion for compound interest appears as two paragraphs on a single page of its brief, bereft of legal citation. Defendant Department notes that it has never been Medicare policy to pay compound interest. The Ninth Circuit in *Sunshine II*, 842 F.2d at 1102, apparently awarded only simple interest. Plaintiff has cited no instance of judicially awarded compound interest on Medicare reimbursement.

Rather than point the court to Medicare practice, statutory authority, regulations, case law or other authority supporting its view that "[t]he effect of the adoption by the Social Security Act of the return on equity capital requires that the interest be compounded," plaintiff simply states the proposition. The court declines to do plaintiff's research or construct plaintiff's arguments. The motion for compound interest is denied.

### CONCLUSION

The court finds that interest on reimbursement for Medicare services rendered by plaintiff St. Joseph's Hospital shall be computed in accordance with 42 C.F.R. § 405.429(a)(1)(ii) (1983), *recodified at* 42 C.F.R. § 413.157(a)(1)(ii) (1986). Plaintiff's motion to review the Secretary's decision is therefore GRANTED. Plaintiff's motion for compound interest is DENIED.

IT IS SO ORDERED.

---

proprietary hospitals. In *St. Agnes Hospital v. Bowen,* 707 F.Supp. 24 (D.D.C.1989) the District Court for the District of Columbia rejected the Ninth Circuit's conclusion that section (a)(1)(iii) could govern litigation interest even though that section was not promulgated as required by 42 U.S.C. § 1395oo(f)(2), the statute establishing litigation interest. The Court noted that

[i]n effect, the Ninth Circuit held that litigation interest is governed by a regulation promulgated pursuant to a statutory provision setting the rate of return on equity capital payable to proprietary hospitals for inpatient hospital services, and not by a regulation promulgated pursuant to the statutory provision establishing the applicable interest rate in Medicare litigation. The Ninth Circuit's reasoning is contrary to the express language of the statute.

*St. Agnes,* 707 F.Supp. at 27.