**ST. AGNES HOSPITAL, et al.**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Appellant.**

**No. 89–5144.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1990.

Decided June 19, 1990.

---

Edward R. Cohen, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Anthony J. Steinmeyer, Atty. Dept. of Justice, Washington, D.C., were on the brief, for appellant. Henry R. Goldberg, Atty. Dept. of Health and Human Services, Washington, D.C., also entered an appearance for appellant.

Margaret M. Manning, Los Angeles, Cal., for appellees.

Ronald N. Sutter, Washington, D.C., was on the brief for amicus curiae District of Columbia Hosp. Ass'n and Ass'n of Delaware Hospitals urging that the decision of the Dist. Court be affirmed.

H. Guy Collier, Washington, D.C., was on the brief for amicus curiae American Hosp. Ass'n urging that the decision of the Dist. Court be affirmed.

Before RUTH BADER GINSBURG, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

St. Agnes and its fellow hospitals prevailed in the District Court on their claims for reimbursement for inpatient hospital services that the hospitals rendered to Medicare beneficiaries. That judgment is not in dispute here. The only issue before us concerns the hospitals' application for interest on the amounts awarded by the District Court. Specifically, we must divine whether or not the District Court erred in ordering that interest be paid to a Medicare provider (prevailing after judicial review) at the rate of 13.875%, rather than at the rate of 9.25%. A narrow issue, true, but one susceptible of convolution and likely to give law students pause before entering upon the study of administrative law.

For the reasons set forth below, we affirm the decision of the District Court that the appropriate rate of interest is 13.875%.

## I. Background

Under the Medicare statute, 42 U.S.C. §§ 1395–1395ccc (1982 and Supp. V 1987), prevailing parties in Medicare reimbursement appeals must be awarded interest on the amount in controversy. After appellees (collectively, "St. Agnes") prevailed on the merits of their Medicare appeal, the District Court awarded interest on the amount in controversy at the rate of 13.875%. *St. Agnes Hospital v. Bowen*, 707 F.Supp. 24 (D.D.C.1989). As he did in the District Court, the Secretary of Health and Human Services now argues that the correct rate of interest is 9.25%. Before we reach the merits of the Secretary's contention, some statutory and regulatory background is in order.

Our starting point is 42 U.S.C. § 1395*oo* (f)(2) (1982) (emphasis supplied), which provides in relevant part:

Where a provider seeks judicial review pursuant to [42 U.S.C. § 1395*oo* (f)(1) ], the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180–day [appeal period] and equal to the rate of return on equity capital established by regulation pursuant to § 1395x(v)(1)(B) of this title and in effect at the time the civil action ... is commenced, to be awarded by the reviewing court in favor of the prevailing party.

This passage leads us to the version of 42 U.S.C. § 1395x(v)(1)(B) (1982), in effect when this suit was filed, which provided:

Such regulations in the case of extended care services furnished by proprietary facilities shall include provision for specific recognition of a reasonable return on equity capital, including necessary working capital, invested in the facility and used in the furnishing of such services, in lieu of other allowances to the extent that they reflect similar items. The rate of return recognized pursuant to the preceding sentence for determining the reasonable cost of any services furnished in any fiscal period shall not exceed one and one-half times the average of the rates of interest, for each of the months any part of which is included in such fiscal period, on obligations issued for purchase by the Federal Hospital Insurance Trust Fund.

The rub in this case is the determination of the rate "established by regulation pursuant to § 1395x(v)(1)(B)." According to St. Agnes and the District Court, that rate is found in 42 C.F.R. § 405.429(a)(1)(ii) (1985) ("subparagraph (ii)"), which provides in relevant part:

Except as provided in paragraph (a)(1)(iii) of this section, the amount ... is determined by applying to the provider's equity capital a percentage equal to *one and one-half times* the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund

. . . .

*Id.* (emphasis supplied). The Secretary contends that the proper rate is found in 42 C.F.R. § 405.429(a)(1)(iii) (1985) ("subparagraph (iii)"), which provides in relevant part:

For cost reporting periods beginning on or after April 20, 1983, the amount allowable in determining the return related to inpatient hospital services is determined using a percentage *equal to the average* of the rates of interest as described in paragraph (a)(1)(ii) of this section.

*Id.* (emphasis supplied).

Finally, we note the relevant language from the Social Security Amendments of 1983, 42 U.S.C. § 1395ww(g)(2)(A) (Supp. V 1987):

The Secretary shall provide that the amount which is allowable, with respect to reasonable costs of inpatient hospital services for which payment may be made under this subchapter, for a return on equity capital for hospitals shall, for cost reporting periods beginning on or after April 20, 1983, be equal to amounts otherwise allowable under regulations in effect on March 1, 1983, *except that the rate of return to be recognized shall be equal to the applicable percentage ... of the average of the rates of interest ... on obligations issued for purchase by*

the Federal Hospital Insurance Trust Fund.

*Id.* (emphasis supplied). In other words, section 1395ww(g)(2)(A) instructs the Secretary to provide the amounts of return on equity ("ROE") as provided in subparagraph (ii), except that the rate of ROE for providers of inpatient hospital services should be equal to the Federal Hospital Insurance Trust Fund ("FHITF") average. The result of this instruction is subparagraph (iii).

## II. Discussion

■ The Secretary originally issued 42 C.F.R. § 405.429 in 1966. *See* 31 Fed.Reg. 14,816 (1966). This provision has been amended and redesignated a number of times. Because of the original language of section 1395x(v)(1)(B), the 1966 version used only one rate—the one and one-half times rate. Despite the amendments and redesignations, St. Agnes argues, the regulation promulgated pursuant to (v)(1)(B) has been altered only once. *See* 52 Fed. Reg. 21,216 (1987) (effective July 6, 1987). That change reduced the rate of return payable to skilled nursing facilities to a rate equalling the FHITF rate for the month in which the court action was filed. *See* 42 C.F.R. § 413.157(b)(3) (1988). Thus, St. Agnes argues, for court actions like this one filed prior to 6 July 1987 the proper interest rate applicable to prevailing providers under sections 1395oo (f)(2) and 1395x(v)(1)(B) is one and one-half times the FHITF rate for the month in which the court action is filed.

According to the Secretary, the introduction of the Prospective Payment System ("PPS") in 1983 fundamentally altered the Medicare reimbursement program and the appropriate rate of return. We have discussed the PPS before. *Georgetown University Hosp. v. Bowen,* 862 F.2d 323, 324–25 (D.C.Cir.1988); *Washington Hosp. Ctr. v. Bowen,* 795 F.2d 139, 141–42 (D.C.Cir. 1986). Essentially, the PPS changed the reimbursement system from one that was cost-based to one that establishes prospectively-fixed rates that do not vary from one case to the next. Prior to the introduction of the PPS, a prevailing Medicare provider could receive the one and one-half times rate regardless of whether the provider offered extended-care or inpatient services. The PPS modified section 405.429, the Secretary argues, so that the regulation now provides for two types of ROE: proprietary (that is, for-profit) providers of *inpatient* services receive a rate equal to the FHITF average, whereas all other proprietary providers receive the one and one-half times rate. Thus, the Secretary concludes, section 405.429(a)(1)(iii) applies to inpatient providers such as St. Agnes, regardless of St. Agnes's reimbursement status prior to the implementation of the PPS.

In its well-reasoned and thorough opinion, the District Court found that this litigation-interest provision of the Medicare statute was not "amended by implication in 1983 when Congress changed the method for hospital reimbursement to a prospective payment system." *St. Agnes Hosp. v. Bowen,* 707 F.Supp. 24, 26 (D.D.C.1989). The "clear statutory language" favored St. Agnes, the District Court concluded, and it noted that "courts cannot easily infer amendment or repeal by implication...." *Id.* at 27. The District Court also rejected the Ninth Circuit's decision to the contrary in *Sunshine Health Systems, Inc. v. Bowen,* 842 F.2d 1097 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988), noting:

> In effect, the Ninth Circuit held that litigation interest is governed by a regulation promulgated pursuant to a statutory provision setting the rate of return on equity capital payable to proprietary hospitals for inpatient hospital services, and not by a regulation promulgated pursuant to the statutory provision establishing the applicable interest rate in Medicare litigation. The Ninth Circuit's reasoning is contrary to the express language of the statute.

*St. Agnes Hosp.,* 707 F.Supp. at 27. The District Court also noted that *Sunshine* "rests on the unsubstantiated premise that litigation interest and the rate of return on equity capital are coterminous" and observed that "neither of [the relevant congressional reports] suggest[s] there is any

connection between the availability of litigation interest and the rate of return on equity capital." *Id.*

We agree with the District Court that the statutory language demonstrates that the relevant regulation promulgated pursuant to section 1395x(v)(1)(B) is subparagraph (ii) rather than subparagraph (iii), and that there is nothing in the legislative history or the sequence of amendments that would allow us to read into the statute some manner of repeal by implication. This lawsuit was filed in February of 1986, at which time there was one—and only one—regulation in effect that was promulgated pursuant to section 1395x(v)(1)(B): subparagraph (ii). As the District Court noted, we "must first look at the express language of the relevant section, and then may consider 'the language and design of the statute as a whole.' " *St. Agnes Hosp. v. Bowen,* 707 F.Supp. at 26 (quoting *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 405, 108 S.Ct. 1255, 1259, 99 L.Ed.2d 460 (1988)). Furthermore, we are "bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (interior quotations omitted).

The plain language here says that a prevailing provider is to receive interest at a rate equal to the return on equity rate in effect at the time the lawsuit is filed under a regulation pursuant to a specified statute, section 1395x(v)(1)(B). That statute instructs the Secretary to promulgate regulations recognizing a reasonable return on invested capital for proprietary facilities that furnish extended care services. Thus, "[t]he statute uses, as a reference rate, a rate used for an entirely different purpose, calculation of return on equity paid to one class of provider of Medicare services, those that furnish 'extended care services.' " Brief for Appellees at 14. In short, the litigation-interest rate for St. Agnes equals the ROE for skilled nursing facilities set by regulation under 1395x(v)(1)(B). The only regulation fitting the statutory description is subparagraph (ii).

The Secretary attempts to avoid the conclusion that subparagraph (ii) is the only provision promulgated pursuant to section 1395x(v)(1)(B) by arguing that inasmuch as he provided for a *return on equity* in section 405.429 for providers that are *not* skilled nursing facilities, the *interest rate* for those other providers must be the rate that he has specified in that regulation. Were it not for the statutory requirement that the applicable provision be one promulgated pursuant to section 1395x(v)(1)(B), the Secretary's argument might not be implausible. There is no tenet of natural law which requires that the rate of interest mandated by section 1395oo (f)(2) be equal to the ROE for a skilled nursing facility.

The Secretary errs, however, in ignoring the fact that subparagraph (iii) was promulgated pursuant to section 1395ww(g)(2)(A) rather than section 1395x(v)(1)(B). Section 1395ww(g)(2)(A) has nothing to do with the interest rate applicable to prevailing parties in Medicare reimbursement disputes. Subparagraph (iii) may not be treated as a regulation promulgated pursuant to section 1395x(v)(1)(B) merely because of its proximity to subparagraph (ii) which was so promulgated. Regulations do not change their statutory provenance solely by their physical situation in the Code of Federal Regulations. The effect of section 1395ww(g)(2)(A) is to set up the ROE under the PPS for proprietary providers of inpatient hospital services. That effect does not repeal by implication the *litigation interest* provision that is applicable to *all* providers. If Congress had wished the statute to operate otherwise, it certainly had the means to so craft it. Under the present statutory scheme, any regulations that are promulgated pursuant to any authority other than section 1395x(v)(1)(B) are irrelevant to the issue before us.

We are aware that the Ninth Circuit, in its decision in *Sunshine Health Systems, Inc. v. Bowen,* 842 F.2d 1097 (9th Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988), has concluded that subparagraph (iii) is the appropriate provision. However, as the District Court said, "[t]he Ninth Circuit's reasoning is contrary to the express language of the statute."

*St. Agnes Hosp.*, 707 F.Supp. at 27. We agree, and for that reason decline to follow the Ninth Circuit's decision in *Sunshine.* In *Sunshine,* the court apparently thought it so odd under these circumstances that Congress would mean what Congress says it means, that the court believed itself at liberty to look to a statutory provision other than section 1395x(v)(1)(B), one that might yield a more satisfactory result in the eyes of the court or the litigants. It is perhaps curious that Congress has determined that the litigation-interest rate for various classes of providers should be determined solely by reference to a rate for return on equity applicable to one class, but such is Congress's determination to make, not ours.

■ At oral argument, the Secretary urged us to conclude that his position here is due *Chevron* deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Such deference is not due, however, where the Secretary has never issued any regulation, ruling or policy statement indicating the repeal-by-implication construction now urged upon the Court. *See Bowen v. Georgetown Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988) (*Chevron* respect not due position articulated by appellate counsel but not by the agency itself). There is simply nothing here to which we may defer.[1]

### III. CONCLUSION

For the foregoing reasons and for those stated in the opinion of the District Court, the opinion of the District Court is

*Affirmed.*

---

1. Even if the Secretary, rather than his appellate counsel, had articulated this position, we doubt that the Secretary's invocation of *Chevron* would greatly aid him in light of our conclusion that the intent of Congress is clear from the express statutory language. As we have noted before, "[i]n reviewing an agency's construction of a statute, this court looks first to 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter.'" *Georgetown Univ. Hosp. v. Bowen,* 862 F.2d 323, 326 (D.C.Cir.1988) (quoting *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781). Congress has spoken, its intent is quite clear, and that is the end of the matter.